**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
MONTEIRO IBRALTINO,                 :
                                    : Civil Action No. 06-3010 (DMC)
        Plaintiffs,                 :
                                    :
        v.                          :         **O P I N I O N**
                                    :
ICE/DHS, et al.,                    :
                                    :
        Defendants.                 :
_____ :


**Appearances:**

MONTEIRO IBRALTINO, Petitioner pro se
# 109304
Middlesex County Adult Correction Center
P.O. Box 266
New Brunswick, New Jersey 08903

CHRISTOPHER J. CHRISTIE
United States Attorney
COLETTE R. BUCHANAN
Assistant United States Attorney
Office of the U.S. Attorney
970 Broad Street
Newark, New Jersey 07102

**Dennis M. Cavanaugh, District Judge**

On June 27, 2006, Monteiro Ibraltino (hereinafter "Petitioner"), an inmate at Middlesex County Adult Correction Center in New Brunswick, New Jersey, filed an Application for Leave to Proceed In Forma Pauperis and a Pro Se Petition for Writ of Mandamus pursuant to 28 U.S.C. § 1361 (hereinafter "Petition") against United States Department of Homeland Security ("DHS") and

DHS' arm, Immigration and Customs Enforcement (hereinafter "ICE").[1] See Docket Entry No. 1. Respondents filed their answer (hereinafter "Answer") to the Petition on September 28, 2006. See Docket Entry No. 4.  On November 9, 2006, Petitioner filed an application for temporary stay of his removal order (hereinafter "Application"). See Docket Entry No. 6.  Finally, on November 13, 2006, Petitioner filed his reply to Respondent's Answer (hereinafter "Reply").  See Docket Entry No. 7.

For the reasons stated below, the Petition for Writ of Mandamus will be denied for failure to make a showing of clear and indisputable right.  Petitioner's Application is denied for lack of jurisdiction but, being construed as Petitioner's a petition for review to the Third Circuit, will be forwarded accordingly.

## BACKGROUND

Petitioner, an aggravated felon under a final order of removal, is a native and citizen of Cape Verde born on July 17, 1981.  See Pet. at 2. Being eight years old, Petitioner was admitted to the United States as a non-immigrant visitor on

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security.  See 6 U.S.C. § 271(a).  The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS.  See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

November 21, 1989, see id., with an authorization to remain in the United States until December 21, 1989. See Ans., Ex. 2. Petitioner, however, stayed in the United States beyond the authorized period. Petitioner's mother, the custodian in whose care Petitioner arrived to the United States, was naturalized on September 17, 1997. See Ans., Ex. 6.

On August 1, 1997, a month and a half prior to Petitioner's mother's naturalization, Petitioner's father (naturalized on March 31, 1994, three and a half years prior to Petitioner's mother) filed a Visa Petition for Alien Relative for Petitioner; that petition was granted on August 7, 1998. See id. Consequently, on August 7, 1998, Petitioner filed an Application for Adjustment of Status to permanent resident based on the status of his father. See Ans., Ex. 3. That application was approved on February 16, 2000, rendering Petitioner a lawful permanent resident. See Ans., Exs. 3, 4.

Following his November 10, 2004, convictions in the District of Massachusetts on various drug-related charges (to two of which Petitioner pled guilty), see Ans., Ex. 5, Petitioner was sentenced to the term of forty-one months of imprisonment and 6 years of supervised release. See id. In view of Petitioner's convictions, the ICE lodged a detainer against Petitioner on February 24, 2006. See Ans., Ex. 8. Consequently, Petitioner was released from incarceration to the custody of ICE on March 10, 2006. See Ans.,

Ex. 10.

In May, 2004, Petitioner filed an Application for Citizenship with ICE asserting derived United States citizenship through his naturalized alien parent (hereinafter "Application I"); the Application was received by ICE on May 18, 2004. See Ans., Ex. 6. On February 10, 2006, Petitioner's Application I was denied by ICE for failure to meet the derivative citizenship requirements, specifically, because Petitioner turned eighteen on July 17, 1999, prior to all the necessary requirements having been fulfilled. See Ans., Ex. 7. The ICE decision explained as follows:

> [Petitioner's] father [was] naturalized on 3/31/1994 and [Petitioner's] mother [was] naturalized on 9/17/1997. [Petitioner], however, did not enter the United States as a lawful permanent resident alien until 2/16/2000, when [Petitioner was] already over the age of 18. [Petitioner's] application has therefore been denied as a matter of law. The denial is without prejudice to [Petitioner's] filing [an] application for naturalization on [Petitioner's] own behalf.

See id. On February 27, 2006, ICE issued Petitioner a Notice to Appear in removal proceedings (hereinafter "Notice") on the basis of Petitioner's convictions, pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(B). See Ans., Ex. 9. In response to the Notice (1) Petitioner unsuccessfully challenged his removal before an immigration judge (hereinafter "IJ") who found that Petitioner failed to demonstrate that Petitioner qualified for United States citizenship under any existing or previously applicable provisions regardless of Petitioner's personal opinion

that Petitioner was a derivative citizen based on the fact of naturalization of his mother, see Ans., Ex. 11; and (2) Petitioner submitted another Application for Citizenship seeking the derivative status on the basis of naturalized status of his parents (hereinafter "Application II"). See Ans., Ex. 12. Same as Petitioner's Application I, Application II was denied by ICE on July 6, 2006, stating the same grounds. See Ans., Ex. 13. In addition, the second denial clarified that Petitioner (1) was ineligible for the citizen status under the Child Citizenship Act (hereinafter "CCA"), since Petitioner turned eighteen prior to February 27, 2001, the date of enactment of the CCI; and (2) was ineligible for the citizen status under 8 U.S.C. § 1432, that is, the preceding statute repealed by the CCA, since Petitioner did not achieve lawful permanent resident status until after he had turned eighteen, and that shortcoming could not be offset by the fact that Petitioner's parents were naturalized prior to Petitioner's eighteenth birthday. See id. Petitioner filed the instant Petition for Writ of Mandamus asserting that (1) Petitioner should be deemed derived his United States citizenship on the date when his mother was naturalized, that is, September 17, 1997, see Pet. at 4; or (2) since Petitioner did not achieve lawful permanent resident status until after he had turned eighteen because of the INS two and a half year handling of his application, the fact of such lengthy handling qualifies Petitioner for equitable relief in

the form of a writ directing grant of derivative citizenship to Petitioner. See Pet. at 4, 6; Reply at 2-3.

## DISCUSSION

### I. Petitioner's Application for Writ of Mandamus

The writ of mandamus is a remedy reserved only for extraordinary circumstances. See In re Nwanze, 242 F.3d 521, 524 (3d Cir. 2001). A petitioner seeking the issuance of such writ must establish that (s)he has no other adequate means of relief and, most importantly, that his or her right to the writ of mandamus is clear and indisputable. See id.

Petitioner's claim that Petitioner derived his United States citizenship, pursuant to 8 U.S.C. § 1432, on the date when his mother was naturalized, that is, September 17, 1997, see Pet. at 4, has no merit since § 1432 unambiguously provided, inter alia, that United States citizenship is due to a child only if the was "residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized." 8 U.S.C. § 1432. Since Petitioner adjusted his status to a permanent resident only on February 16, 2000, Petitioner clearly did not have a lawful admission for permanent residence at the time of naturalization of Petitioner's mother, the parent last naturalized, hence rendering § 1432 inapplicable to Petitioner's circumstances.

Petitioner alternatively claims that the two and a half year INS' processing of Petitioner's Application for Adjustment of Status to a permanent resident caused Petitioner loss of Petitioner's opportunity to obtain United States citizenship.[2]  See Pet. at 4, 6; Reply at 2-4.  This claim is equally without merit.

Section 1432 allowed for numerous modes of obtaining United States citizenship.  Specifically, it allowed Petitioner to seek the status regardless of whether or not Petitioner had his legal residence status prior to turning eighteen had Petitioner sought the citizen status on the basis of naturalization of his both parents rather than his mother.[3]

---

[2] Petitioner's calculations are incorrect.  Since Petitioner applied for adjustment of his status to a permanent resident only on August 7, 1998, and obtained that status only on February 16, 2000, INS' proceeding took eighteen months.  This discrepancy, however, has no effect on the Court's analysis.

[3] Before its repeal, Section 1432(a) specified certain situations that conveyed automatic citizenship on children born outside of the United States to alien parents.  They were:

> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized . . . .

While Petitioner chose the mode of seeking derive citizenship through his mother's naturalization which had the pre-requisite step of Petitioner applying and obtaining the status of permanent alien under § 1432(a)(3)-(5) (hereinafter "Two-Step Process"), Petitioner was free to file his direct application for the citizenship as soon as both Petitioner's parents were naturalized, that is, at any time from September 17, 1997, under § 1432(a)(1) (hereinafter "One-Step Process").  Hence, had Petitioner been worried about the risk of losing his opportunity to obtain United States citizenship under the Two-Step Process because Petitioner's eighteenth birthday was nearing, Petitioner certainly could eliminate that risk by seeking the citizenship under the One-Step Process available to Petitioner from September 17, 1997, to Petitioner's eighteenth birthday, July 17, 1999, that is, for almost for two years.  The fact that Petitioner was peculiarly steadfast in choosing the Two-Step Process over the One-Step Process, cannot indicate that Petitioner was wrongfully denied his opportunity to obtain United States citizenship.

Since Petitioner failed to establish that his right to the writ of mandamus is clear and indisputable, Petitioner's application for Writ of Mandamus will be denied.  See In re Nwanze, 242 F.3d at 524.

**II.   Petitioner's Application for Stay of Order of Removal**

Any challenge to an order of removal must be presented by petition for review with the appropriate Circuit Court of Appeals, pursuant to Section 106(a)(5) of the REAL ID Act of 2005.[4]  "Under the new judicial review regime imposed by the REAL ID Act, a petition for review is now the sole and exclusive means of judicial review for all orders of removal except those issued pursuant to 8 U.S.C. § 1225(b)(1)."  Bonhometre v. Gorizales, 414 F.3d 442, 445 (3d Cir. 2005); see also 8 U.S.C. § 1252(a)(5) (1999 & Suppl. 2005).  The circuit courts' jurisdiction was also enlarged to include consideration of constitutional claims or questions of law raised in a criminal, alien's petition for review.  See 8 U.S.C. § 1252(a)(2)(D)(2005).  The applicable venue provision, 8 U.S.C. § 1252(b)(2), provides that a "petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceeding."  Since the seat of Petitioner's IJ was Newark, New Jersey, see Ans., Ex. 11, the

---

[4]

Section 106(a)(5) of the REAL ID Act of 2005 reads:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall he the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e) [relating to orders issued under 8 U.S.C. § 1225(b)(1)].

United States Court of Appeals for the Third Circuit is the proper venue for Petitioner's Application challenging his order of removal.

Consequently, being divested of subject matter jurisdiction to issue any decision or that implicate's Petitioner's challenge to a removal order, this Court construes Petitioner's Application as Petitioner's a petition for review to the Third Circuit and will forward it accordingly.

### CONCLUSION

For the foregoing reasons, Petitioner's Petition for writ of Mandamus is denied for failure to make a showing of clear and indisputable right. Petitioner's Application is denied for lack of jurisdiction and, being construed as Petitioner's a petition for review to the Third Circuit, will be forwarded accordingly.

An appropriate Order accompanied this Opinion.

 S/ Dennis M. Cavanaugh  
**DENNIS M. CAVANAUGH**  
**United States District Judge**

Dated: November 15, 2006